# CHARLESTON.

BALISLE v. JOHNSON *et als.*

Submitted May 2, 1916.   Decided May 9, 1916.

1. SHERIFFS AND CONSTABLES—*Liabilities—Filing Indemnifying Bond.*
   The omission of a sheriff or other officer to return to the clerk's office within twenty days an indemnifying bond taken by him, as provided by section 3, chapter 107, serial section 4494, Code 1913, will not, in an action by the claimant of the property taken against him and his sureties on his official bond, deprive him of the defense provided by said section, if at the time of such suit he has in fact returned said bond to the clerk's office, and the sureties thereon were at the time of taking the same good and solvent persons. (p. 341).

2. SAME—*Actions—Pleading.*
   The special plea of the defendants in this case, setting up the defense so provided by said statute, was erroneously rejected. (p. 341).

3. SAME—*Liabilities—Damages.*
   In an action upon the bond of a sheriff for property claimed by a third person and taken and sold under an execution, the true measure of damages is the market value of the property in its then condition at the time and place where seized and taken into custody by the officer. (p. 344).

Error to Circuit Court, McDowell County.

Action by B. R. Balisle against J. F. Johnson, Sheriff of McDowell County, and others, on his bond as sheriff. Judgment for plaintiff, and defendants bring error.

*Reversed and remanded.*

*Anderson, Strother, Hughes & Curd,* for plaintiffs in error.

*Joseph M. Crockett,* for defendant in error.

MILLER, JUDGE:

Defendant, Johnson, sheriff of McDowell County, was required by McKenzie, a judgment creditor of Conner, to levy an execution upon and sell as the property of Conner, certain saw logs claimed by Balisle, the father-in-law of Conner, and a doubt having arisen whether said property was liable to

such levy Johnson required of McKenzie an indemnifying bond as provided by section 2, chapter 107, serial section 4493, Code 1913, and such bond was given.

The third section of the same chapter provides: ''3.  If such bond be not given within a reasonable time after such notice, the officer may refuse to levy on such property, or restore it to the person from whose possession it was taken, as the case may be.  If it be given, where there has been no levy, within a reasonable time, or after a levy, before the property is so restored, *it shall be returned within twenty days to the clerk's office of the circuit court* of the county in which such property may be and the claimant or purchaser of such property shall, *after such bond is so returned,* be barred of any action against the officer levying thereon, provided the security therein be good at the time of taking it.''

Plaintiff, after said bond had been executed and returned to the clerk's office, sued Johnson and the sureties on his official bond for the value of the property so levied on and sold, and obtained the judgment complained of.

The first question presented for decision by defendants' special plea number one, rejected, is, whether by force of the statute the omission of the officer who took the bond to return the same to the clerk's office within the twenty days prescribed by the statute, deprives him of the defense set up in his plea. The rejected plea avers that said bond had been returned to and was then in such clerk's office, and that plaintiff had notice that such bond had been demanded and given, and also, full information respecting the same, and of the existence and place of deposit thereof, and well knew that the same was accessible to him for all legal purposes, both prior and subsequent to the sale of the property under said execution.

Our statute, sections 2 and 3, of chapter 107, was taken from the Code of Virginia, which supplemented 1 and 2 Will. iv. c. 58, section 6, originally adopted into the Code of that state, enacted to relieve sheriffs and other officers from the rigorous rules of the common law.  Murfree on Sheriffs, sections 582, 583, 607, 608.

Our opinion is that the provision of said section 3, relating to the time of returning the bond to the clerk's office, properly

construed, is so far mandatory, that the duty cannot be wholly neglected by the officer, but that time is not strictly of the essence of the duty enjoined upon the officer. If the bond be in fact returned before action is begun against him, as at common law, we think he is protected, for the statute says "after such bond is so returned" the claimant or purchaser of such property shall be barred of any action against the officer levying thereon. True, the statute says "so returned"; but shall we give the statute a construction which for so technical a default will result in depriving him of the protection which the statute was intended to afford him? We do not think so. After such bond has been in fact returned no injury or disadvantage can result to the claimant of the property; his right of action thereon has not been impaired; the bond is in full force; the principal and sureties are in no way released or discharged by such omission of the officer. The manifest purpose of requiring the return of the bond was that it might be filed in a public office where it could be seen and inspected by those interested therein or affected thereby, and that copies might be obtained if needed for action thereon, and perhaps also that the claimant might have notice thereof, and, if he so desired, avail himself of his right to give a suspending bond and retake the property. But if he has had notice thereof, and was in no way injuriously affected by the omission of the officer he should not be heard to complain. In the case of *Aylett* v. *Roane,* 1 Gratt. 282, an indemnifying bond taken by a sheriff according to the provision of the Code of 1819, but which did not contain the condition for the protection of the purchaser as provided by the act of 1828, was held good as a statutory bond for the protection of the claimant of the property, and a good defense in an action by the claimant against the sheriff taking the bond, the court saying: "When he has taken a good bond, the law protects him from the action of the party claiming the property, unless the securities in the bond become insolvent." Our statute protects the officer if the sureties were good at the time of taking the bond. And in *Davis* v. *Davis,* 2 Gratt. 363, it was decided that mere irregularities in reciting the facts in a bond of indemnity, or made to cover several executions, was not thereby

impaired or invalidated as a statutory bond. The "twenty days" provision was not contained in the Code of 1819, nor in the amendment of 1828. It seems to have first made its appearance in section 5, of chapter 152, Code 1849, and we think the evident purpose was to provide a place for the filing of the bond, and to fix a time therefor, but not so as to render the bond invalid as a protection to the officer, if forsooth, he should omit for any reason to comply strictly with this provision. *Evans* v. *Graham,* 37 W. Va. 661, relied on, is not authority to the contrary. That was an action by the officer on a bond of indemnity taken by him, and the question whether his failure to return the bond within the twenty days, if actually returned before suit against him by a claimant of the property, would deny him the defense provided by the statute, was not presented or decided.

As was held in *Hunter* v. *Trustees of Berkeley Springs,* 47 W. Va. 343: "Laws prescribing the duties of public officers are usually peremptory or mandatory, while those fixing a time for the performance of such duties are directory." As already noted, while the time for returning the bond is prescribed, the statute says, "after such bond is so returned" action against the officer shall be barred. In *State ex rel.* v. *Buchanan,* 24 W. Va. 362, it was decided, that the statute which requires the assessor to deliver a copy of the personal property book to the county clerk on or before the first day of July is directory; that the right of the state to have her revenue assessed and collected could not be lost by the laches of her agent. Suppose in the case before us the sheriff and his bondsmen were insolvent, would right of action on such indemnifying bond by the claimant of the property be lost because of the omission of the officer to return it to the clerk's office within the twenty days? or suppose it had never been returned, but retained in the officer's possession, would his omission to make such return deprive the claimant or the purchaser of the property of right of action thereon? Certainly such default of the officer could not be fraught with such consequences, and it certainly would constitute no defense to the principal or sureties on the bond.

If this be so, what good reason can be interposed for deny-

ing the officer the protection of the statute? We can perceive none, unless the purpose was to punish him for an omission not material to the rights of the parties, nor depriving them of a single benefit intended by the statute. Such a construction would be too narrow and would be sacrificing substance to mere shadow. The statute is remedial, and though it may be said to be in derogation of the common law remedy, it should not be given a construction which would defeat its main purpose, and deprive the parties of the protection intended. To hold the statute directory to the extent indicated is not to legislate, but to give the statute a reasonable and sensible construction, so as to allow it to accomplish its purposes. For these reasons we are of opinion that the court erred in rejecting the plea.

The only other point necessary to be considered, in view of a possible result on the trial on the issue presented by defendants' plea, is as to the true measure of damages in a suit by a claimant against the officer for the property so taken. The property taken was logs, not manufactured lumber, and of course the only true measure of damages would be the market value of the logs at the time and place where seized and taken into custody by the officer, not the value of the lumber manufactured therefrom. Much of the evidence admitted over objection related to the value of the lumber in the logs. The evidence should have been properly limited.

Our opinion is to reverse the judgment, set aside the verdict of the jury, and to overrule plaintiff's objection to defendants' special plea number one, and to permit the same to be filed, and to remand the case to the circuit court with leave to plaintiff to take issue on said plea, if desired, and for further proceedings to be had therein according to the principles herein enunciated, and further according to rules and principles governing courts of law.

*Reversed and remanded.*